```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| LEVIN, FISHBEIN, SEDRAN & BERMAN | : : : | CIVIL ACTION NO. 09-3936 |
| Plaintiff, | : : | |
| v. | : : | |
| RICHARD A. JAMESON, et al., | : : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                           DECEMBER 14, 2009

        Presently before the Court are Defendants, Kemppel, Huffman & Ellis, P.C. (the "KHE Firm"); George S. Harrington ("Harrington"); Richard A. Jameson ("Jameson"); and Richard A. Jameson and Associates, P.C.'s (the "Jameson Firm")[1] (collectively, "Defendants") motions to transfer, or, alternatively, to dismiss for lack of personal jurisdiction.[2] Defendants seek to have this case transferred to the United States District Court for the District of Alaska. For the reasons that follow, the Court concludes that transfer is appropriate and Defendants' motions will be granted.

---

    [1]    Defendants Jameson and the Jameson Firm will be referred collectively throughout this Memorandum as the "Jameson Defendants."

    [2]    The Jameson Defendants and Harrington did not file individual motions to transfer, rather, these defendants filed joinders to the motion filed by the KHE Firm.

## I. BACKGROUND

This case arises from a fee dispute between attorneys who were involved in the litigation concerning the Exxon Valdez Oil Spill in March 1989 (the "Exxon Litigation").[3] Plaintiff, Levin, Fishbein, Sedran & Berman ("Plaintiff") is a Pennsylvania law firm located in Philadelphia. Plaintiff alleges that it entered into a written agreement with the Jameson Defendants in order to provide litigation services with respect to the Exxon Litigation. (Pl.'s Compl. ¶ 9.) Plaintiff alleges that it has performed legal services and provided substantial funds for more than 20 years with respect to the Exxon Litigation, and that Defendants received the benefit of these services and funds without providing the appropriate payment. (Id. at ¶¶ 8-9.)

In April 1989, the Jameson Defendants entered into an agreement with Harrington and the KHE Firm which provided for the joint prosecution of claims in the Exxon Litigation (the "Harrington Agreement"). (Id. at ¶ 12.) Harrington was essentially the only attorney in Cordova, Alaska (the location of the Exxon Valdez Oil Spill), and therefore was the point-person for dealing with clients in the Exxon Litigation. At the time the Harrington Agreement was entered into, the Jameson Firm was

---

[3] The Honorable H. Russel Holland, Senior District Judge for the District of Alaska, has presided over the Exxon Litigation since its inception.

located in Harrisburg, Pennsylvania.  (Id. at ¶ 11.)  The
Harrington Agreement provided that Harrington would be retained
by clients in the Exxon Litigation pursuant to a 33 1/3 %
contingent fee arrangement, and then refer those clients to the
Jameson Firm.  (Id. at ¶ 12.)  In exchange for these referrals,
Harrington would receive 31 1/2 % of net fee generated by those
claims.  (Id. at ¶ 12.)

Pursuant to the Harrington Agreement, the KHE Firm
agreed to act as liaison counsel between Harrington and the
Jameson Firm, by providing office space, staffing, and overhead
in prosecution of the Exxon Litigation claims.  (Id. at ¶ 13.)
In exchange for providing these logistical services, the
Harrington Agreement provided that the KHE Firm would receive 18
1/2 % of the net fee generated by these Exxon Litigation claims.
(Id. at ¶ 13.)

Under the Harrington Agreement, the Jameson Defendants
are entitled to receive 50% of the fees on the Harrington-
referred clients under the 33 1/3 client contingency agreements
secured by Harrington.  (Id. at ¶ 15.)  The Harrington Agreement
further provided that in any cases referred to the Jameson Firm
directly by the KHE Firm, the KHE Firm would receive 33% of the
net fee and the Jameson Firm would receive the remaining 66%.
(Id. at ¶ 16.)

The Harrington Agreement further provided that the

Jameson Firm would be listed as "Of Counsel" to the KHE Firm, but that the Jameson Firm would retain separate letterhead in which it could list the office locations of the KHE Firm as its own. (Id. at ¶ 22.)

Plaintiff alleges that the KHE Firm and Harrington failed to fulfill their obligations under the Harrington Agreement by not providing the required office space, administrative support, litigation funds, or legal services. (Id. at ¶¶ 24-30.) As a result of these breaches, Plaintiff alleges that Harrington and the KHE Firm effectively abandoned the Exxon Litigation and that Plaintiff was forced to expend its own resources to make up for the breach of these obligations.

In July 1989, Plaintiff and the Jameson Defendants entered into an agreement for joint representation of clients who had claims in the Exxon Litigation (the "Jameson Agreement") (Id. at ¶¶ 31-32.) The Jameson Agreement provided for the allocation between Plaintiff and the Jameson Firm of expenses and liabilities in connection with the Exxon Litigation. (Id.) Pursuant to the Jameson Agreement, the Jameson Firm was responsible for 66 2/3% of all expenses, liabilities, duties, and obligations, and entitled to receive 66 2/3% of the net fee. (Id.) Plaintiff was entitled to receive 33 1/3% of the net fee on the same basis. (Id.)

Plaintiff alleges that it fulfilled all of its

obligations under the Jameson Agreement and provided funding for the Exxon Litigation on a monthly basis in amounts representing 33 1/3% of the expenses that the Jameson Firm was incurring on behalf of the clients. (Id. at ¶ 35.) These payments made by Plaintiff were required, in part, due to Harrington and the KHE Firm breaching their obligations under the Harrington Agreement. (Id.) On November 14, 1991, Plaintiff and the Jameson Defendants amended the Jameson Agreement in order to provide for a sliding scale of a 50/50 allocation of any fees earned depending upon whether the subject claim was resolved after August 1, 1992. (Id. at ¶ 38.) During the period from November 1991 until 1994, the Jameson Firm gradually ceased funding its share under the Jameson Agreement and Plaintiff was required to fund virtually 100% of the prosecution of the Exxon Litigation claims. (Id. at ¶ 41.)

Plaintiff alleges that eventually the Jameson Defendants, Harrington, and the KHE Firm all effectively abandoned the legal representation of the Exxon Litigation clients. (Id. ¶¶ at 43-45.) Plaintiff argues that it has advanced costs in excess of $4 million and expended over $10 million in lodestar time with respect to the Exxon Litigation. Plaintiff has received partial reimbursement for its costs, but has not received any payments for its legal fees with respect to its representation of the referred clients.

The Exxon Qualified Settlement Fund ("EQSF") was established in the Exxon Litigation to provide for the orderly payment of litigation expenses and fees for the attorneys involved. Plaintiff alleges that approximately $1.9 million has been set aside by the EQSF for the services provided by Plaintiff, and Plaintiff now seeks to obtain a judgment in this Court to present to the EQSF Administrator in order to collect such funds.

On August 28, 2009, Plaintiff filed a complaint alleging the following causes of action against Defendants: (1) breach of contract; (2) unjust enrichment; (3) quantum meruit; (4) tortious interference with Plaintiff's rights; (5) conversion; and (6) injunctive relief.

**II. ANALYSIS**

   A.   <u>Applicable Law</u>

Questions of transfer of venue are governed either by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406. Section 1404(a) controls the transfer of a case where both the original and the requested venue are proper, whereas section 1406 applies where the original venue is improper and provides for either transfer or dismissal of the case. Section 1404(a) provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). In contrast, section 1406(a) provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Id. § 1406(a). In federal diversity cases, venue is proper in one of the following three circumstances:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Id. § 1391(a).

"Distinctions between §§ 1404(a) and 1406(a) have to do with discretion, jurisdiction, and choice of law." Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007). Transfers pursuant to section 1404(a) are discretionary determinations based upon convenience which apply only where the original venue is proper. Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995). "Once a court determines that venue would be proper in another district, the court must consider 'all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" Sentry Select Ins. Co. v. LBL Skysytems, Inc., 486 F. Supp. 2d 496, 505 (E.D. Pa.

2007) (quoting Jumara, 55 F.3d at 879). Under § 1404(a), "[t]he burden for establishing the need for transfer . . . rests with the movant." Jumara, 55 F.3d at 879. Further, in considering a motion for transfer under § 1404(a), the court should weigh both private and public interests. Id. The relevant private factors include, inter alia, plaintiff's choice of forum, defendant's preference as to the forum, whether the claim arose elsewhere, convenience of the parties, financial and physical burden on the parties of litigating in a distant forum, and the location of books and records. Id. (internal citation omitted).

Equally important are public factors, such as the enforceability of the judgment, practical considerations impacting the expeditious and inexpensive administration of the case, the relative administrative difficulty in the two fora resulting from court congestion, the local interest in deciding controversies, and the familiarity of the trial judge with the applicable state law in diversity cases. Id. at 879-80 (internal citations omitted).

  B. Application of Law to the Facts

    1. Transfer pursuant to § 1406

The first determination that needs to be made with respect to a request for transfer of venue is whether section 1404 or 1406 applies, i.e., whether venue is appropriate before this Court. Since the basis for jurisdiction is diversity, in

order for venue to be proper, "a substantial part of the events or omissions giving rise to the claim" must have occurred here. 28 U.S.C. § 1391.

Defendants argue that venue is improper in the Eastern District of Pennsylvania. Defendants contend that the true locality of this action is the District of Alaska, because that is the location where the Exxon Litigation occurred and where the attendant legal obligations of the parties were rendered. Defendants emphasize that not a single client to whom the services were rendered in the instant fee dispute brought any claim in Pennsylvania and that all of the court proceedings as well as the bulk of litigation-related activities, such as depositions, were conducted in Alaska.

Plaintiff counters that venue is proper in this forum because "a substantial part of the events or omissions giving rise to the claim occurred" in Pennsylvania. Plaintiff contends that because the proper focus of this case is the amount of legal work it performed from Pennsylvania, then the events giving rise to the litigation (i.e., Plaintiff's substantial work without payment) occurred in Philadelphia. Plaintiff further notes that the Jameson Agreement was negotiated and executed in Pennsylvania.

With respect to venue under section 1391, and by extension the propriety of venue for purposes of transfer under

section 1404 and 1406, the Court concludes that venue is proper in this district. Although the backdrop to the instant dispute, the Exxon Litigation, occurred in Alaska, the focus of Plaintiff's claims are the amount of work that it did with respect to the Exxon Litigation in Philadelphia. As such, a substantial amount of Plaintiff's legal work, estimated by Plaintiff to be at least 80% of the aggregate, was performed in Philadelphia. Therefore, venue is proper in this district, thereby eliminating section 1406 as a source of authority for a transfer of venue.

2. Transfer pursuant to § 1404(a)

The fact that venue is proper in the Eastern District of Pennsylvania does not prohibit transfer to the District of Alaska under section 1404(a).[4] All parties concede that Alaska is a proper venue for these proceedings.[5] Therefore, transfer is

---

[4] Regardless of whether this Court can properly exercise personal jurisdiction over Defendants, the authority to transfer a case remains under section 1404(a). See United States v. Berkowitz, 328 F.2d 358, 361 (3d Cir. 1964) (finding that transfer is allowable pursuant to section 1404(a) even in the absence of personal jurisdiction) (citing Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467 (1962)); Dollar Savings Bank v. First Security Bank, 746 F.2d 208, 214 (3d Cir. 1984) (holding that if no personal jurisdiction is established, transfer under section 1404(a) is not precluded); Lomanno v. Black, 285 F. Supp. 2d 637, 640 (E.D. Pa. 2003) (internal citation omitted). Therefore, it is unnecessary to consider the merits of Defendants' challenge to personal jurisdiction as the Court concludes that transfer is warranted.

[5] Although section 1404(a) does not require the transferor court to possess personal jurisdiction in order to

section 1404 and 1406, the Court concludes that venue is proper in this district. Although the backdrop to the instant dispute, the Exxon Litigation, occurred in Alaska, the focus of Plaintiff's claims are the amount of work that it did with respect to the Exxon Litigation in Philadelphia. As such, a substantial amount of Plaintiff's legal work, estimated by Plaintiff to be at least 80% of the aggregate, was performed in Philadelphia. Therefore, venue is proper in this district, thereby eliminating section 1406 as a source of authority for a transfer of venue.

2. Transfer pursuant to § 1404(a)

The fact that venue is proper in the Eastern District of Pennsylvania does not prohibit transfer to the District of Alaska under section 1404(a).[4] All parties concede that Alaska is a proper venue for these proceedings.[5] Therefore, transfer is

---

[4] Regardless of whether this Court can properly exercise personal jurisdiction over Defendants, the authority to transfer a case remains under section 1404(a). See United States v. Berkowitz, 328 F.2d 358, 361 (3d Cir. 1964) (finding that transfer is allowable pursuant to section 1404(a) even in the absence of personal jurisdiction) (citing Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467 (1962)); Dollar Savings Bank v. First Security Bank, 746 F.2d 208, 214 (3d Cir. 1984) (holding that if no personal jurisdiction is established, transfer under section 1404(a) is not precluded); Lomanno v. Black, 285 F. Supp. 2d 637, 640 (E.D. Pa. 2003) (internal citation omitted). Therefore, it is unnecessary to consider the merits of Defendants' challenge to personal jurisdiction as the Court concludes that transfer is warranted.

[5] Although section 1404(a) does not require the transferor court to possess personal jurisdiction in order to

proper if transfer to Alaska serves the interest of justice and the convenience of the parties regardless of whether venue may be proper in Pennsylvania.

The Third Circuit has articulated certain private and public factors for the Court to consider in determining whether transfer under section 1404(a) is appropriate. Jumara, 55 F.3d at 879-80. Based upon the factors enumerated in Jumara, the Court concludes that it is appropriate to transfer this case to the District of Alaska.

With respect to the private factors, there are obvious practical connections between this litigation and the northwest section of the country.[6] First, all of the Defendants are located in Alaska or Washington. Despite Plaintiff's contention to the contrary, this fee dispute may very well require some form of testimony from the clients serviced by the respective parties, and all of these clients are located in Alaska or Washington.

Second, the financial and physical burden on Defendants if forced to litigate in Pennsylvania would be considerably greater than on Plaintiff if forced to litigate in Alaska. While

---

transfer, the transferee court must be a proper forum for the litigation, i.e., personal jurisdiction must exist. See 28 U.S.C. § 1406. Here, there is no dispute that jurisdiction exists over all the parties to the instant suit in Alaska. Therefore, there are no impediments to ordering transfer pursuant to section 1404(a).

[6] Although Plaintiff's choice of forum is important, it is not controlling. This is particularly so where Plaintiff has the financial resources to litigate away from its home court and is in the business of litigating away from its home court.

Defendants have never litigated in Pennsylvania, Plaintiff is familiar with Alaska, having traveled and conducted legal business there in connection with the Exxon Litigation for some time. While neither side claims that it would be financially unable to litigate away from their home forum, Plaintiff is a nationally-known law firm which handles mass tort litigation throughout the country and which, by the nature of its practice, is better accustomed to litigate in a foreign forum.

Third, the location of the evidence related to the Exxon Litigation favors transfer to Alaska. Plaintiff contends that the focus of the instant litigation is restricted to its own legal work, and the evidence pertaining to this work being located in Philadelphia renders the connection to the Exxon Litigation a red herring. This argument is unavailing. Plaintiff narrowly focuses solely on the work it performed without recognizing that because the instant dispute involves the allocation of work among various law firms, it will be necessary to have an understanding of the corresponding legal work performed by Defendants in the Exxon Litigation. The evidence supporting this information, in the form of books and records, is located in Alaska.

Fourth, the Alaska forum affords the parties an opportunity to present their cases before a court with substantial experience with the issues in this case. The fact

that Judge Holland has presided over the Exxon Litigation since its inception and is intimately familiar with the nature of the legal work required to be performed in the course of the Exxon Litigation, provides an inimitable insight into the issues presented in the instant matter.

The public interest factors enumerated in Jumara also favor transfer to Alaska.  The most persuasive factor in this regard is the expeditious and inexpensive administration of the case, i.e., judicial efficiency.  As stated above, it is undisputed that Judge Holland is intimately familiar with the Exxon Litigation.  While the issues here are only a small subset of the issues presented in the much larger and complex Exxon Litigation, an understanding of the larger context in which the instant issues arise would be helpful in the adjudication of this case.  To undertake this tutorial, this Court, obviously, would face a steep learning curve.  While this familiarity is not a prerequisite to adjudicating Plaintiff's claims, this difficult-to-replicate perspective will avoid waste of judicial resources.[7]

Finally, there are at least two state actions pending in Alaska touching upon the issues in this case.  One, the

---

[7] An additional public factor set forth in Jumara is the issue of enforceability of a judgment obtained by the plaintiff. The funds for which Plaintiff would satisfy a judgment in the litigation are those funds held in escrow by the EQSF.  The EQSF is a fund that is located in Alaska and administered by attorneys in Alaska.  Judge Holland is responsible for overseeing the entire administration of the EQSF.

"charging lien" litigation which Plaintiff brought in Alaska, and in which it succeeded in escrowing several million dollars to satisfy a judgment in this case.  Two, the pending arbitration action surrounding issues under the Harrington Agreement is being litigated in Alaska.  Although Plaintiff is not a party to the arbitration action, Defendants are, and any action to confirm or vacate the award is likely to be filed in Alaska.  The ultimate resolution of those two disputes, which at least tangentially touch upon the issues in this case, would take place under the superintendency of Judge Holland in Alaska.[8]

Based upon the private and public factors discussed above, the Court concludes that the convenience of the parties and the interest of justice warrant a transfer of this case to

---

[8] Judge Holland has indicated that he is ready, willing, and able to accept this dispute in the event of a transfer by this Court.  In a recently issued opinion in the "charging lien" litigation, he stated:

> There is pending in the Pennsylvania litigation a motion to transfer that case from the Eastern District of Pennsylvania to the District of Alaska.  While it is of course the prerogative of the Pennsylvania court to decide whether or not a transfer is appropriate, the undersigned believes that the motion to transfer should be granted "in the interest of justice."  28 U.S.C. § 1404(a).  This court has been the center of activity with respect to this complex litigation for 20 years.  This court has background knowledge of this litigation that even attorneys who have been peripherally involved may not be able to replicate for a court unfamiliar with the history of this case.

In re The Exxon Valdez, Civ. No. 3:89-cv-95, at *4-5 (D. Alaska Dec. 7, 2009).

the United States District Court for the District of Alaska.

**III. CONCLUSION**

For these reasons, Defendants' motions to transfer shall be granted.  An appropriate order will issue.